STEPHENS, Judge.
*781 Defendant Joshua Ryan Wilson appeals from the judgment entered on his guilty plea for impaired driving. Wilson argues that the trial court erred by failing to suppress evidence obtained during his seizure by a police officer. Because we conclude Wilson was not seized under the Fourth Amendment, we find no error in the court's refusal to suppress the evidence obtained from the police officer's encounter with Wilson.
Factual and Procedural Background
The evidence considered by the trial court pursuant to Wilson's motion to suppress tended to show the following:
*782 On 25 September 2013, Officer Blake Johnson of the Burlington Police Department went to a residence at 402 Brooklyn Street to find a man who had outstanding warrants for his arrest. Officer Johnson was acting on an anonymous tip to the Burlington Police Department that the wanted individual would be at the residence. Officer Johnson parked his car on Brooklyn Street across from the residence and got out of the vehicle. He walked toward the residence.
Officer Johnson observed a pickup truck leaving the residence at 402 Brooklyn Street. Officer Johnson was in the road, but was not blocking it. The truck, driven by Wilson, moved toward Officer Johnson from a cross street adjacent to the residence. Officer Johnson waved his hands back and forth just above shoulder level to tell Wilson to stop the vehicle. The officer's intention was to question Wilson to see if he knew anything about the man with the outstanding warrants. Officer Johnson had no suspicion that Wilson was the man he was looking for nor did he observe any illegal behavior by Wilson. Officer Johnson was in uniform, but no weapon was drawn, neither police car was blocking the road, and the blue lights and sirens were not activated.
Wilson stopped the truck with the driver's side window next to Officer Johnson. Wilson was alone in the vehicle. Officer Johnson "smelled the odor of alcohol coming from inside the vehicle" almost immediately. He asked Wilson about his alcohol consumption. Wilson admitted that he had been drinking, but said that he could not remember how many drinks he had consumed.
Officer Johnson arrested Wilson for driving while subject to an impairing substance.
*739 Wilson pled guilty in Alamance County District Court on 4 August 2015, but appealed to the Superior Court. In Superior Court, Wilson moved to suppress the evidence resulting from his encounter with Officer Johnson. A hearing was held on 15 September 2015 before Judge Michael O'Foghludha, who denied Wilson's motion to suppress. Wilson subsequently pled guilty on 24 September 2015, reserving the right to appeal the order denying suppression of the evidence. Wilson gave notice of appeal the same day in open court.
Discussion
On appeal, Wilson argues that the trial court erred in denying his motion to suppress the evidence obtained from his encounter with Officer Johnson, because Officer Johnson unconstitutionally seized Wilson without reasonable suspicion or probable cause. Because the trial court's findings of fact are supported by competent evidence, and the findings support its conclusions of law that Wilson was not seized *783 under the Fourth Amendment, we find no error in the trial court's refusal to suppress the evidence obtained by Officer Johnson.
1. Standard of Review
Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke , 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Unchallenged findings of fact are presumed to be supported by competent evidence. See State v. Pickard , 178 N.C.App. 330, 334, 631 S.E.2d 203, 206 (2006) (citations omitted). "[A]ny determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." In re Helms , 127 N.C.App. 505, 510, 491 S.E.2d 672, 675 (1997) (internal citations omitted). Findings of fact which are mislabeled as conclusions of law may be re-classified by the appellate court and subjected to the appropriate standard of review. State v. Hopper , 205 N.C.App. 175, 179, 695 S.E.2d 801, 805 (2010). "The trial court's conclusions of law ... are fully reviewable on appeal." State v. Hughes , 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).
2. No Fourth Amendment seizure
Wilson first argues that the trial court erred in finding as fact that a reasonable person would not have felt compelled to stop to talk to Officer Johnson. Although labelled as a finding of fact by the trial court, "whether a reasonable person would feel free to decline the officer['s] request[ ]" requires a legal analysis, Florida v. Bostick , 501 U.S. 429, 436, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389, 400 (1991), and the exercise of judgment. Thus, we treat the trial court's finding that a reasonable person would not have felt compelled to stop as a conclusion of law. Wilson does not challenge any other findings of fact. Therefore, the remaining findings of the trial court are presumed to be supported by competent evidence.
Wilson also argues that the trial court erred in concluding as a matter of law that he was not seized under the Fourth Amendment. Whether Wilson was seized turns on the same analysis as whether a reasonable person would have felt compelled to stop. See id. , 501 U.S. at 436, 111 S.Ct. at 2387, 115 L.Ed.2d at 400. Therefore, we address these arguments together, and hold that each conclusion is supported by the trial court's findings of fact.
The Fourth Amendment to the United States Constitution guarantees to individuals the right to be free from unreasonable searches *784 and seizures. U.S. Const. amend. IV. "[T]he crucial test [to determine if a person is seized] is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " Id. , 501 U.S. at 437, 111 S.Ct. at 2387, 115 L.Ed.2d at 400 (quoting Michigan v. Chesternut , 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565, 569 (1988) ).
Wilson cites Bostick for the rule that a person is seized when his freedom of movement is terminated or restrained "by means *740 of physical force or show of authority." 501 U.S. at 434, 111 S.Ct. at 2386, 115 L.Ed.2d at 398 (quoting Terry v. Ohio , 392 U.S. 1, 19 n.16, 88 S.Ct. 1868, 1879 n.16, 20 L.Ed.2d 889, 905 n. 16 (1968) ). However, Wilson omits the context in which the Court made this statement. The Court cited Terry while making the point that a "seizure does not occur simply because a police officer approaches an individual and asks a few questions." Id. Rather, as the Court stated in Terry , a seizure occurs "[o ]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen ." Id. (quoting Terry , 392 U.S. at 19 n.16, 88 S.Ct. at 1879, 20 L.Ed.2d at 905 n.16 ) (emphasis added).
In Bostick , two police officers with visible badges boarded a bus and questioned the defendant "without articulable suspicion." Id. at 431, 111 S.Ct. at 2384, 115 L.Ed.2d at 396. One officer carried a gun in a zipper pouch, but never brandished the weapon. Id. at 432, 111 S.Ct. at 2385, 115 L.Ed.2d at 397. The officers asked the defendant for consent to search his luggage, which was given. Id. at 432, 111 S.Ct. at 2385, 115 L.Ed.2d at 396-97. The defendant argued that he was unconstitutionally seized by the officers on the bus because he did not feel free to leave the encounter. Id. at 435, 111 S.Ct. at 2386, 115 L.Ed.2d at 399. The Court reasoned that the restriction of the defendant's movements happened not because of the police, but because he chose to get on a bus. Id. at 436, 111 S.Ct. at 2387, 115 L.Ed.2d at 399. This restriction, therefore, and the defendant's feeling that he could not leave the bus, did not necessarily render the encounter non-consensual. Id. The Court ultimately remanded the case to the Florida Supreme Court to analyze the voluntariness of the encounter based on the totality of the circumstances. Id. at 439-40, 111 S.Ct. at 2389, 115 L.Ed.2d at 402.
Wilson also cites United States v. Mendenhall for the reasonable person test adopted by the Supreme Court in which a person is seized "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980). However, immediately after that holding, the Supreme Court explained:
*785 Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.
Id. at 554-55, 100 S.Ct. at 1877, 64 L.Ed. 2d at 509 (internal citations omitted).
Finally, Wilson cites Chesternut for the proposition that Officer Johnson's hand motions were tantamount to a command to stop, and were thus a display of authority resulting in Wilson's seizure. Wilson mischaracterizes the holding of the Supreme Court. In Chesternut , the Supreme Court held that the defendant was not seized when police officers in a marked car followed him as he ran away from the car. 486 U.S. at 574-75, 108 S.Ct. at 1979-80, 100 L.Ed.2d at 572-73. Rather than list behaviors that would constitute a seizure, in analyzing whether a reasonable person would have interpreted the police conduct as an attempt to restrict his movement, the Court stated, "The record does not reflect that the police activated a siren or flashers; or that they commanded respondent to halt, or displayed any weapons; or that they operated the car in an aggressive manner to block respondent's course or otherwise control the direction or speed of his movement." Id. at 575, 108 S.Ct. at 1980, 100 L.Ed.2d at 573. The Court did not indicate that any one of these behaviors would constitute an authoritative display resulting in a Fourth Amendment seizure. To the contrary, the Court applied the test enumerated in Mendenhall , which requires evaluation of all the facts and circumstances surrounding the encounter. Id. at 573, 108 S.Ct. at 1979, 100 L.Ed.2d at 571-72. In doing so, it concluded that the "presence of a police car driving parallel to a running pedestrian," while intimidating, *741 was not sufficient on its own to constitute a seizure. Id. at 575, 108 S.Ct. at 1980, 100 L.Ed.2d at 573.
Unlike the officers in Bostick , Officer Johnson did not approach Wilson in a confined space nor did Wilson see his weapon. Wilson's movement was not restricted the way a passenger on a bus would be restricted with a police officer standing above him. To the contrary, the fact that Wilson was in a truck while Officer Johnson was on foot and not blocking the road indicates that Wilson's movement was not restricted. Wilson's encounter was thus more voluntary than that of the defendant in Bostick , whose encounter on the bus was held to be consensual.
*786 Bostick v. State , 593 So.2d 494, 495 (Fla. 1992) (per curiam), on remand from 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389.
Further, none of the examples illustrated by the Court in Mendenhall of circumstances indicating a seizure are present in this case. The trial court found that Officer Johnson was alone on the scene, he did not draw his weapon, and his lights and sirens were off. The officer also did not touch Wilson or use any language or tone which would indicate that compliance with his request would be compelled.
The facts of this case are more similar to those in Chesternut , where there was no evidence that the officers used lights and sirens, displayed a weapon, or blocked the defendant's movement with the patrol car. While Wilson argues that Officer Johnson's arm motions were tantamount to a command to stop, the motions occurred without any other display of police authority, such as lights, sirens, or a weapon, and while Wilson had the ability to continue driving on the road in front of him. Despite Wilson's argument that Officer Johnson at least partially blocked the road, the trial court made no finding that the road was blocked. To the contrary, the court found that "[t]here was no roadblock in place, and Officer Johnson's patrol car was not blocking traffic." Further, the presence of a single police officer waving his hands in the road is a less authoritative display than a patrol car driving parallel to a pedestrian, which was held insufficient to constitute a seizure.
Wilson argues that his case is distinguishable from North Carolina precedent based on the fact that Officer Johnson signaled to Wilson to stop rather than approaching the moving vehicle. Citing two cases, State v. Farmer , 333 N.C. 172, 424 S.E.2d 120 (1993), and State v. Veal , 234 N.C.App. 570, 760 S.E.2d 43 (2014), Wilson argues that Officer's Johnson's motions were a "directive" and a "summons" rather than a request.
In Farmer , two police officers in a car passed the defendant, who was walking on the side of the road. 333 N.C. at 180, 424 S.E.2d at 125. Because he matched the description of the person they were on their way to question, the officers backed up their car and parked about twenty feet in front of the defendant. Id. at 180, 424 S.E.2d at 125. The officers exited their vehicle and approached the defendant to question him. Id. After some questioning, the officers decided to call the local sheriff's department, and asked the defendant if he would wait in the police car. Id. at 182, 424 S.E.2d at 126. One officer opened the door for the defendant, who entered the vehicle without being touched. Id. The door to the vehicle was left open. Id. at 182-83, 424 S.E.2d at 126. While the defendant was in the vehicle, the officer asked him for biographical *787 information and subsequently why he had lied about his name. Id. at 183, 424 S.E.2d at 127. The defendant argued that he was unconstitutionally seized during the conversations on the street and in the car. Id. at 179, 424 S.E.2d at 124. While the North Carolina Supreme Court noted that one of the factors in its voluntariness analysis was that the officers approached the defendant rather than summoning him, the Court analyzed the totality of the circumstances, as dictated by the test set out in Mendenhall. Id. at 187-88, 424 S.E.2d at 129. The other factors the Court noted were that the encounter was on a public street, the officers did not wear uniforms or display weapons, and they requested but did not demand information. Id. at 188, 424 S.E.2d at 129. Based on all of these factors, the Court held that the defendant was not seized either during the initial questioning on the street or during questioning in the police vehicle, because he had no objective *742 reason to believe he was not free to leave. Id. at 188, 424 S.E.2d at 129-30. Nothing in the Court's analysis indicates that a request for the defendant to stop and speak with the officers would be a determinative factor indicating a seizure. Further, Officer Johnson's hand motions were a less authoritative display than questioning a defendant inside of a police vehicle.
In Veal , an officer parked his car in a gas station parking lot and approached the defendant's stopped vehicle on foot. 234 N.C.App. at 571-72, 760 S.E.2d at 44. The officer asked to speak with the defendant. Id. at 571, 760 S.E.2d at 44. During the conversation, the officer smelled alcohol and noticed signs of intoxication. Id. The officer proceeded to have the defendant perform sobriety tests, and then placed him under arrest for driving while impaired. Id. The defendant argued that he was unconstitutionally seized when the officer questioned him at his vehicle. Id. at 573, 760 S.E.2d at 46. Applying the totality of the circumstances test as set forth in Chesternut and applied in Bostick , this Court held that the defendant was not seized. Id. at 575-76, 760 S.E.2d at 47. In reaching this conclusion, the Court noted that the officer did not park behind the defendant's car, activate his blue lights, or speak in a threatening tone. Id. at 575, 760 S.E.2d at 47. The Court did not consider the factor of approaching the vehicle as opposed to any other method of initiating conversation. However, all of the factors that the court did take into account in holding that the defendant was not seized are present in this case.
Finally, Wilson argues that he was compelled to stop by North Carolina traffic law, which obligated him to "comply with any lawful order or direction of any law-enforcement officer or traffic-control officer ... which order or direction related to the control of traffic."
*788 N.C. Gen. Stat. § 20-114.1(a) (2015). We disagree. Officer Johnson's hand motion was not related to the control of traffic nor were there any circumstances which would indicate to a reasonable person that Officer Johnson was acting as a traffic control officer. The trial court found that there was no roadblock and no blue lights were activated. Further, there was no evidence of any cones, construction, a visible accident, or any other indication that Officer's Johnson's motions were "related to the control of traffic." Thus, this is not a factor which would indicate to a reasonable person that he was not free to leave the encounter.
Considering the totality of the circumstances, Officer Johnson's hand motions were not so authoritative or coercive that a reasonable person would not have felt free to leave. This holding is in line with established North Carolina precedent in cases in which no lights or sirens were used, no weapon was brandished, no language or behavior was used indicating compliance was mandatory, and the defendant's movement was not blocked. See Veal , 234 N.C.App. at 575, 760 S.E.2d at 47 ; State v. Williams , 201 N.C.App. 566, 571-72, 686 S.E.2d 905, 909 (2009) (holding that the defendant was not seized when an officer parked his vehicle across the street without blocking the defendant's egress, did not brandish a weapon, did not activate the blue lights or sirens, questioned the defendant, and asked for consent to search the vehicle without using any language or behavior that would indicate the defendant was not free to leave), disc. review denied , 363 N.C. 859, 695 S.E.2d 450 (2010) ; State v. Isenhour , 194 N.C.App. 539, 544, 670 S.E.2d 264, 268 (2008) (holding that the defendant was not seized when two uniformed officers parked their marked car eight feet from the defendant's vehicle, approached the vehicle and questioned the defendant, but did not block the defendant from leaving, use threatening language, brandish a weapon, or turn on the lights or sirens). The trial court's findings therefore support its conclusions of law that Wilson was not seized under the Fourth Amendment and that a reasonable person would have believed he was free to leave when Officer Johnson waved his arms to signal Wilson to stop. The order of the trial court is
AFFIRMED.
Judge BRYANT concurs.
Judge DILLON dissents by separate opinion.